**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JUSTIN RYAN BOLES,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **CRIMINAL NO. 14-0199-WS** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

**ORDER**

This matter comes before the Court on petitioner Justin Ryan Boles' *pro se* filing which is styled "Exigent and Emergent Motion for Compassionate Release" (doc. 328).  The Motion has been briefed and is now ripe.[1]

The court file reflects that Boles entered a guilty plea to one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and one count of conspiracy to possess a List 1 Chemical with knowledge and reasonable cause to believe it would be used to manufacture a controlled substance, also in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  On July 29, 2015, this Court sentenced Boles to a term of imprisonment of 188 months as to each count of conviction, such terms to run concurrently.  According to Bureau of Prisons records, Boles has a projected release date of July 2, 2029, and is currently housed at FCI Forrest City Low in Forrest City, Arkansas.

Boles is one of numerous defendants who has petitioned this Court for compassionate release or modification of sentence based on the effects of the COVID-19 pandemic.  In his

---

[1]       Also pending is the Government's Motion for Leave to File Under Seal (doc. 333).  In that Motion, the Government seeks leave to file under seal a copy of Boles' recent prison medical records.  The Court agrees that these materials are helpful to evaluate Boles' motion for compassionate release, and that they are properly submitted under seal to safeguard Boles' privacy.  Accordingly, the Government's Motion for Leave to File Under Seal is **GRANTED**.  The exhibit found at docket entry 334 (consisting of Boles' current medical records) shall be maintained **UNDER SEAL** by the Clerk of Court pending further order from the Court.

Motion, filed *pro se*, Boles would invoke 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act enacted in December 2018.  That section allows a defendant to petition the Court directly for reduction of a term of imprisonment for "extraordinary and compelling reasons," without a motion by the Director of the Bureau of Prisons ("BOP"), after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  § 3582(c)(1)(A).  Documentation before the Court confirms that Boles has satisfied this administrative exhaustion requirement.  Specifically, on July 8, 2020, Boles made a formal electronic request for compassionate release to the Warden of FCI Forrest City Low.  (Doc. 332, Exh. C, PageID.1656-57.)  On August 31, 2020, the Warden denied his request for the following stated reasons: "[Y]our concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.  Accordingly, your RIS request is denied at this time."  (*Id.*, PageID.1655.)  Based on this evidence, the Court concludes that Boles in fact requested compassionate release from the prison warden more than 30 days before he filed his Motion, such that he is authorized by the amended version of the statute to request judicial modification of his term of imprisonment on the ground that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).

That said, the statute is clear that any such reduction of a sentence for "extraordinary and compelling reasons" must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's applicable policy statement, set forth at Application Note 1 to the Commentary of § 1B1.13 of the Federal Sentencing Guidelines, defines "extraordinary and compelling reasons" justifying sentence reduction as including (i) the defendant's serious medical condition diminishing his ability to provide self-care within the environment of a correctional facility; (ii) the advanced age of the defendant; (iii) family circumstances such as death or incapacitation of the caregiver of the defendant's minor children; and (iv) other reasons "[a]s determined by the Director of the Bureau of Prisons."  *Id.*  Boles' Motion does not implicate the first three categories of extraordinary and compelling reasons;[2] therefore, his request would appear to rise or fall on the fourth ground identified by the Sentencing Commission.

---

[2]     To be sure, Boles indicates that he has previously been diagnosed positive for COVID-19 infection, and that he also suffers from asthma.  However, he makes no showing that these conditions presently diminish his ability to provide self-care in a prison environment.

The BOP's Program Statement 5050.50 identifies in some detail the types of reasons that the Director of the BOP deems "extraordinary and compelling" within the fourth prong of the Sentencing Commission's policy statement. Nothing in PS 5050.50 reflects a determination by the BOP that compassionate release may be appropriate based on an inmate's generalized fear of contracting COVID-19 in prison. As such, Boles is effectively urging this Court to find that his circumstances constitute an "extraordinary and compelling reason" for § 3582(c)(1)(A) relief, even though doing so would not be within the scope of reasons determined by the BOP to be extraordinary and compelling and therefore would not be consistent with the Sentencing Commission's applicable policy statement. Simply put, then, Boles' Motion would have this Court ignore statutory language requiring that sentence reductions for "extraordinary and compelling reasons" be consistent with Sentencing Commission policy statements by essentially superimposing the Court's own policy preferences over those of the Sentencing Commission and the Bureau of Prisons. This Court has previously declined to do so. *See United States v. Lynn*, 2019 WL 3805349, *4 (S.D. Ala. Aug. 13, 2019) ("Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version. Until that day, however, the Court must follow the policy statement as it stands."). It reaches the same conclusion today for the same reasons set forth in *Lynn*.

Even assuming this Court were empowered now to make determinations of "extraordinary and compelling reasons" in addition to those specified in U.S.S.C. § 1B1.13 and PS 5050.50, the undersigned would not find that the circumstances described by Boles meet that high standard for compassionate release. To understand why, it is helpful to examine § 12003(b)(2) of the CARES Act, which granted the Attorney General authority to lengthen the maximum amount of time for which the BOP is authorized to place a prisoner in home confinement beyond the limits imposed by 18 U.S.C. § 3624(c)(2).[3] In exercising this authority, the Attorney General has issued Memoranda to the Director of the BOP dated March 26, 2020 and April 3, 2020. Among other things, those Memoranda enumerate criteria for inmates to be eligible for home confinement. Those discretionary factors include, without limitation, the

---

[3]     Boles has specifically requested early release and the ability to serve the remainder of his sentence under home confinement. The factors that are relevant in the home confinement inquiry are also helpful in analyzing whether a defendant should be granted early release under the First Step Act because of COVID-19 related concerns.

following: (i) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines; (ii) the security level of the facility, with priority given to inmates residing in low and minimum security facilities; (iii) the inmate's conduct in prison; (iv) the inmate's score under PATTERN, with inmates scoring above the minimum score not receiving priority treatment; (v) whether the inmate has a demonstrated, verifiable re-entry plan that will prevent recidivism and maximize public safety; and (vi) the seriousness and severity of the inmate's crime of conviction and danger posed by the inmate to the community.  The Attorney General also directed the BOP to maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where significant levels of COVID-19 infection are materially affecting operations.

Key non-exhaustive factors listed in the Attorney General's Memoranda do not favor home confinement or early release in this case.  Boles is 37 years old, so he is not of an advanced age that might heighten his risk of contracting COVID-19.  Moreover, all information before the Court suggests that Boles does not suffer from any medical conditions that would exacerbate his likelihood of contracting a serious case of coronavirus.  Indeed, Boles' Presentence Investigation Report filed on May 6, 2015 lists only "low blood sugar" and acid reflux as limitations on his physical well-being.  (Doc. 151, PageID.659, ¶ 62.)  In his Motion, Boles states that he "suffers from asthma" (doc. 328, PageID.1615); however, there is no mention of any such condition in his prison medical records, even where such records catalogue his "health problems" and "medical history."  For example, a "mild sprain left groin" was the current health problem listed in Boles' medical records arising from an April 21, 2020 health services encounter.  (*See* doc. 334, PageID.1686-87.)  The Court thus lacks any documented evidence that Boles in fact suffers from asthma, much less that his condition is sufficiently severe to place him at special risk of contracting COVID-19.

To be sure, the medical records also reflect that Boles tested positive for COVID-19 as an asymptomatic patient on May 14, 2020, and that he remained asymptomatic until June 11, 2020, at which time he was released from medical isolation.  (Doc. 334, PageID.1670-71.)  It appears that Boles has re-tested negative for COVID-19 as recently as November 5, 2020.  (*Id.*, PageID.1683.)  In his Motion, Boles suggests that "he is no longer safe in the prison-custodial detention setting" and that as long as he is housed at FCI Forrest City Low, "he has no chance and will likely succomb [*sic*] to the exposure of the COVID-19 virus."  (Doc. 328, PageID.1617.)  There is no indication and no reason to believe that Boles has not fully recovered

from his previous bout with COVID-19.  Nor does the fact that he has previously contracted –
and recovered from – the novel coronavirus in prison suggest that he is particularly vulnerable or
susceptible to being reinfected by COVID-19 or that any such reinfection would likely be more
severe than his earlier asymptomatic experience with the virus.  Furthermore, the Court would
decline to exercise its discretion to grant sentencing relief to Boles in any event, given the
severity of the offense conduct (manufacturing methamphetamine over a significant period of
time) and the length of time remaining on his sentence (even after factoring in good-time credits,
Boles has nearly 9 years remaining on his original 188-month sentence, such that he has served
less than half of the prison term originally imposed).

      After considering all of the relevant circumstances and information presented, the Court
concludes that Boles has made no showing of the sort of "extraordinary and compelling reasons"
contemplated by 18 U.S.C. § 3582(c)(1)(A)(i) that might warrant the discretionary exercise of
any First Step Act authority for compassionate release, sentence modification, or release to home
confinement to protect him from risks of contracting the COVID-19 virus in prison.
Accordingly, Boles' Motion for Compassionate Release (doc. 332) is **denied**.

      DONE and ORDERED this 24th day of November, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE