## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUSTIN RYAN BOLES,** | ) | |
| **BOP Reg. #13990-003,** | ) | |
| **Movant,** | ) | |
| | ) | **CIVIL ACTION NO. 1:18-00073-WS-N** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 1:14-00199-WS-N-7** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Justin Ryan Boles, a federal prisoner proceeding without counsel (*pro se*), has

filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 dated

February 6, 2018 (Doc. 269[1]) challenging the judgment entered against him in the

above-numbered criminal action. The assigned District Judge has referred Boles's §

2255 motion to the undersigned Magistrate Judge for appropriate action under 28

U.S.C. § 636(a)-(b), Rule 10 of the Rules Governing Section 2255 Proceedings for the

United States District Courts ,and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b);

(2/15/2018 electronic reference). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned

is authorized to require responses, issue orders to show cause and any other orders

necessary to develop a complete record, and to prepare a report and recommendation

to the District Judge as to appropriate disposition of the § 2255 motion, in accordance

with 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules Governing Section 2255

Proceedings.

---

[1] All "Doc." citations herein refer to the docket of the above-numbered criminal action.

The Government timely filed a response (Doc. 284) in opposition to Boles's § 2255 motion, as ordered by the Court under Rules 4(b) of the Rules Governing Section 2255 Proceedings (*see* Doc. 271), and Boles filed no reply to the response within the time allowed. *See* (*id.*); Rule 5(e) of the Rules Governing Section 2255 Proceedings. The Government also timely filed a supplemental response (Doc. 311) to the § 2255 motion in response to the Court's order directing it to further address one of Boles's grounds for relief (Doc. 306). Boles's § 2255 motion is now under submission for determination of whether expansion of the record and/or an evidentiary hearing is warranted. *See* (*id.*, PageID.1550-1551); Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings.

Having reviewed the parties' submissions and other relevant portions of the record in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is warranted, and that Boles's § 2255 motion (Doc. 269) is due be **DENIED** and **DISMISSED with prejudice**.

## I.    *Background*

On July 31, 2014, the grand jury for this district returned an indictment against Boles and five co-defendants (Doc. 1), charging Boles with six counts involving various drug-related offenses.  Boles was appointed trial counsel and initially entered a plea of not guilty to all charges.  (*See* Doc. 50).  On November 14, 2014, Boles, pursuant to a written plea agreement (Doc. 82), changed his plea and entered a plea of guilty to two violations of 21 U.S.C. § 846 charged in the indictment: Count One,

which charged an offense of conspiracy to manufacture a controlled substance (methamphetamine) in violation of 21 U.S.C. § 841(a)(1); and Count Eight, which charged an offense of conspiracy to possess a List I chemical (pseudoephedrine) with knowledge and belief that it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2). (*See* Docs. 1, 93).[2]  On July 29, 2015, the Court sentenced Boles to 188 months of imprisonment followed by 3 years of supervised release on each count, said terms to run concurrently, along with a $200.00 assessment. (Doc. 195). Consistent with the terms of the plea agreement, the remaining counts against Boles were dismissed on motion of the Government. (*See id.*).

Boles appealed the judgment, and new counsel was appointed to represent him on appeal. (*See* Docs. 203, 209). By written opinion issued November 17, 2016, the Eleventh Circuit Court of Appeals dismissed Boles's direct appeal of his sentence pursuant to the appeal waiver in his plea agreement, and affirmed as to his convictions. *See* (Docs. 241, 242); *United States v. Boles*, 666 F. App'x 805 (11th Cir. 2016) (per curiam) (unpublished). On March 20, 2017, the United States Supreme Court denied Boles's petition for a writ of certiorari to review the Eleventh Circuit's decision. *See* (Doc. 243); *Boles v. United States*, 137 S. Ct. 1358 (2017). Boles timely filed the present § 2255 motion in February 2018. (*See* Doc. 269, PageID.1435).

---

[2] Both counts also cited 18 U.S.C. § 2, which provides for who can be punished as a "principal" for certain offenses against the United States.

## II.    *Legal Standards*

### a.    **General Standards of Review under § 2255**

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). However, "[o]nce the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A]

petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g.*, *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). In making this determination, the Court is aware that it must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin*, 767 F.3d at 1215.

### b. Effect of Guilty Plea

The " 'concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). *See also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("'A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.'" (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) ("

'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009)).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  Therefore, when, as here, a § 2255 motion is filed collaterally challenging convictions obtained pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  *See also Bousley*, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

### c.  Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984).  "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).  Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."  *Id.* at 504.  *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

"To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]'" *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g., Burt v. Titlow*, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance..."). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence,"...in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome

> would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.' " *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting *McMann*[ *v. Richardson*], 397 U.S. [759,] 770, 90 S. Ct. [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*, 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)...

> ...

> ...*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the

district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L. Ed. 2d 74 (1984). The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v.*

*Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. *McCoy*, 804 F.2d at 1198; *Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449; *Long*, 883 F.2d at 969.

The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted).[3] In claiming prejudice under *Strickland* and *Hill*, "[a] movant must [also]

---

[3] *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.' *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants.*' *Stano*, 921 F.2d at 1151.

allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.' " *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

### III.    *Analysis*

Boles asserts three grounds for relief under § 2255, all alleging some form of ineffective assistance of trial counsel. The undersigned will address each in turn.

### a.    **Ground 1 - Double Jeopardy**

> The double jeopardy clause of the Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Specifically, the double jeopardy clause protects "against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (footnotes omitted)).

*United States v. Bonilla*, 579 F.3d 1233, 1240 (11th Cir. 2009)

On direct appeal, Boles argued that Count Eight was a lesser-included offense to Count One,[4] and therefore "the district court plainly erred in convicting and

---

Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. *Hill* modified the second part of the *Strickland* test in the context of a guilty plea. Garrett 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 59, 106 S. Ct. at 370.").

[4] A lesser included offense is "an offense necessarily included in the offense charged[.]" Fed. R. Crim. P. 31(c)(1). "To be 'necessarily included' within the meaning of the Rule, the lesser offense must be such that it is impossible to commit the greater without having first committed the lesser." *Theriault v. United States*, 434 F.2d 212, 214 (5th

sentencing him for both conspiracy counts because doing so violates the Fifth Amendment's protection against double jeopardy[.]" *Boles*, 666 F. App'x at 806, 808-09.[5] Applying "plain error" review because the issue was not first raised in the district court,[6] the Eleventh Circuit affirmed Boles's convictions, holding:

> [W]e have not published a decision, nor has the Supreme Court, addressing whether convictions for both conspiracy to manufacture methamphetamine and conspiracy to possess pseudoephedrine with knowledge it would be used to make methamphetamine violate the Double Jeopardy Clause. Moreover, the penalty provisions at issue do not clearly indicate whether Congress intended them to be separate offenses because both provide for a 20-year maximum term of imprisonment, but the methamphetamine count carries additional penalties. Thus, even if there was an error, it was not plain because there is no case or statute directly on point that resolves whether Count 8 would be considered a lesser included offense of Count 1.

*Boles*, 666 F. App'x at 808-09 (citations omitted).

---

Cir. 1970). *See also Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam) ("The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.").

[5] *See United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009) ("As a general proposition, when a defendant has violated two different criminal statutes, the Double Jeopardy Clause is implicated when both statutes prohibit the same act or transaction or when one act is a lesser included offense of the other.").

[6] *See Bobb*, 577 F.3d at 1371 ("While we usually review *de novo* claims of double jeopardy, we review issues not properly raised before the district court…for plain error. Under the plain error standard, we will affirm the district court unless: (1) there was an error in the district court proceedings; (2) the error was plain; and (3) the error affected the defendant's substantial rights." (citations omitted)).

Ground 1 in Boles's present § 2255 motion claims that trial counsel rendered unconstitutionally ineffective assistance by failing to raise the above-noted double jeopardy challenge with this Court prior to entry of judgment.

> Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction. *United States v. Smith,* 532 F.3d 1125, 1127 (11th Cir. 2008) (citing *United States v. Reynolds,* 215 F.3d 1210, 1215 (11th Cir. 2000)). There are, however, a few exceptions to this rule. *Id.* In certain circumstances, a double jeopardy challenge is such an exception. *Id.* In *Menna v. New York,* the Supreme Court held that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." 423 U.S. 61, 62, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975) (citing *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974)). In a footnote, the Court explained that a guilty plea establishes factual guilt and therefore all constitutional violations which are inconsistent with that factual guilt are waived by a guilty plea. *Id.* at 63 n. 2, 96 S. Ct. 241. But, when the "state may not convict petitioner no matter how validly his factual guilt is established," the constitutional violation is not waived. *Id.* "A plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute." *Id.*

> Following *Menna,* [the Eleventh Circuit has] held that "a defendant does not waive a double jeopardy challenge when, judged on the basis of the record that existed at the time the guilty plea was entered, the second count is one the government may not constitutionally prosecute." *Smith,* 532 F.3d at 1127 (citing *United States v. Kaiser,* 893 F.2d 1300, 1302 (11th Cir. 1990)). In other words, a defendant *may* challenge his conviction if he does not need to go outside what was presented at the plea hearing to do so. *United States v. Broce,* 488 U.S. 563, 575–76, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

*Bonilla*, 579 F.3d at 1240. *See also Boles*, 666 F. App'x at 808 ("Nor is Boles's double jeopardy challenge barred by the plea itself, independently of the appeal waiver. Boles seeks to challenge his convictions based on the record as it existed at the time

the guilty plea was entered, and we have allowed these kinds of challenges." (citing *Smith*, 532 F.3d at 1127)). Defendants "waive their double jeopardy challenges by pleading guilty to indictments that, on their face, described separate offenses." (citing *Broce*, 488 U.S. at 575-76, and *United States v. Allen*, 724 F.2d 1556, 157-58 (11th Cir. 1984)).

The undersigned does not construe Ground 1 as raising a claim of ineffective assistance of counsel in plea negotiations, as Boles does not allege that, but for his counsel's purportedly deficient advice, he would have not pleaded guilty to Counts One and Eight, and instead would have proceeded to trial on all six counts charged against him. Rather, given *Bonilla*'s reasoning, the undersigned liberally construes Ground 1 as raising a claim of ineffective assistance of counsel for failure to raise a double jeopardy challenge prior to the imposition of judgment.

The problem for Boles is that, both on direct appeal and in his § 2255 motion, he has pressed the wrong double jeopardy argument. The Double Jeopardy Clause's prohibition on imposing separate punishments when one act is a lesser included offense of the other is generally only implicated "when a defendant has violated two **different** criminal statutes…" *Bobb*, 577 F.3d at 1371 (citing *Rutledge v. United States*, 517 U.S. 292, 297 (1996) ("For over half a century we have determined whether a defendant has been punished twice for the 'same offense' by applying the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932). If 'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are

two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Ibid.* In subsequent applications of the test, we have often concluded that two different statutes define the 'same offense,' typically because one is a lesser included offense of the other.")). *Accord United States v. Flanders*, 752 F.3d 1317, 1338 (11th Cir. 2014).  Both counts to which Boles pleaded guilty charged conspiracy in violation of the same statute, 21 U.S.C. § 846, though each charged a conspiracy to commit a different offense. "*Blockburger v. U.S.*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), generally provides the test for determining whether two offenses are the same. However, the *Blockburger* test is not sufficient when there is a claim of double jeopardy on two conspiracy charges, because a prosecutor could divide a single conspiracy into two separate charges by alleging different overt acts for the two conspiracies when in fact only one conspiracy existed." *United States v. Loyd*, 743 F.2d 1555, 1562 (11th Cir. 1984) (citing *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978)).  Accordingly, because Boles's double jeopardy argument based on Count Eight being a lesser included offense of Count One is meritless, counsel was not ineffective for failing to raise it. *See, e.g., Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim…").

Boles should have instead raised a double jeopardy claim under the reasoning of *Braverman v. United States*, 317 U.S. 49 (1942).  "[I]n *Braverman* the Supreme Court held that where an indictment sets forth the illegal objects of a single conspiracy in several counts, only one sentence for a single conspiracy may be

imposed." *United States v. Colson*, 662 F.2d 1389, 1392 (11th Cir. 1981). This is because "[t]he single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute…For such a violation only the single penalty prescribed by the statute can be imposed." *Braverman*, 317 U.S. at 54. *Accord Colson*, 662 F.2d at 1392 ("[A]lthough there was only one conspiracy, charging the conspiracy in two counts is appropriate where different statutory penalties are involved, provided the defendant receives only one sentence."). "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies. When [defendants] plead[] guilty to two charges of conspiracy on the explicit premise of two agreements which started at different times and embraced separate objectives, they concede[] guilt to two separate offenses." *Broce*, 488 U.S. at 570-71.[7]

---

[7] *See also Broce*, 488 U.S. at 570 ("Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes. The *Broce* indictments alleged two distinct agreements: the first, an agreement beginning in April 1978 to rig bids on one specified highway project, and the second, an agreement beginning 15 months later to rig bids on a different project. The Court of Appeals erred in concluding that because the indictments did not explicitly state that the conspiracies were separate, respondents did not concede their separate nature by pleading guilty to both. In a conspiracy charge, the term 'agreement' is all but synonymous with the conspiracy itself, and as such has great operative force."); *United States v. Anderson*, 872 F.2d 1508, 1520 (11th Cir. 1989) ("Where the gist of the crime is a conspiracy or an agreement to commit one or more unlawful acts proscribed by different statutes, but each count charges a violation of the same general conspiracy statute, and the proof reveals a single ongoing conspiratorial agreement, only a single penalty under that conspiracy statute can be imposed…This rule differs where the same agreement violates two separate statutes, each of which proscribes a discrete conspiracy."); *Fortner v. Sec'y, Dep't Of Corr.*, 315 F. App'x 853, 855–56 (11th Cir. 2009) (per curiam) (unpublished) ("We also find no merit in Fortner's argument that his two conspiracy

"The following factors determine if more than one agreement exists: '(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.' " *United States v. Nino*, 967 F.2d 1508, 1511 (11th Cir. 1992) (quoting *United States v. Benefield*, 874 F.2d 1503, 1506 (11th Cir. 1989) (quoting *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978))). Consideration of these factors here supports the conclusion that Counts One and Eight encompassed a single agreement to commit multiple offenses.[8]

Count Eight alleged that the conspiracy to possess pseudoephedrine, with knowledge that it would be used to manufacture a controlled substance, began "in or

---

convictions violated the Double Jeopardy Clause, under *Braverman*, because they were part of a single agreement … Unlike in *Braverman*-where the defendants entered into *one agreement* and were charged with seven different conspiracies for violating seven different internal revenue statutes,…the evidence at Fortner's trial demonstrated two *separate agreements* for the delivery and sale of cocaine. The first agreement was entered into on the morning of August 20, 1997, when Fortner and Tracy Gauthier sold John Carlson two ounces of cocaine, and was completed when Carlson paid Fortner $1,800 for those two ounces on the afternoon of August 20, 1997. The second agreement took place when Fortner and Gauthier agreed to purchase four additional ounces of cocaine for delivery and sale to Carlson on the afternoon of August 20, 1997. One agreement was for the purchase of two ounces of cocaine, and the second agreement was for the purchase of four ounces of cocaine. Because Fortner entered into two agreements rather than one, his case is distinguishable from *Braverman*…").

[8] The Government did not attempt to argue otherwise in response to the Court's order directing it to further address Ground 1, which set forth the analysis of the *Marable* factors that follows this footnote.

about mid-2011," while Count One alleged that the conspiracy to manufacture methamphetamine began "in or about 2013," with both alleging that their respective conspiracies "continu[ed] through in or about late May of 2014…" (*See* Doc. 1, PageID.5). The "time" factor weighs in favor of finding a single agreement when the timeframe of one conspiracy charge falls within the broader timeframe of another conspiracy charge. *See Benefield*, 874 F.2d at 1508 (noting "the complete overlap in time manifest in both Indictments (1986 events encompassed within 1984 to 1987 events)"); *Nino*, 967 F.2d at 1511 (finding that the "time" factor supported a single agreement where "the time frames for the two conspiracies overlap").

The "place" factor also weighs in favor of finding a single agreement, as both counts allege that their respective conspiracies occurred in the same geographic location, "the Southern District of Alabama."[9] And because both counts allege that

---

[9] *Compare Benefield*, 874 F.2d at 1507 (finding "place" factor supported finding a single agreement where the record showed the following: "As to the location of the alleged crimes, the Galveston Indictment says that the Galveston conspiracy took place 'in the Galveston division of the Southern District of Texas, and within the jurisdiction of this Court, and elsewhere….' The Galveston DEA Form Six report indicates that shortly before his arrest in Texas in 1986, Benefield said that he had a large marijuana distribution network covering the South. The Atlanta Indictment charges that it was a primary object of the Atlanta conspiracy to obtain multi-kilogram quantities of marijuana from the southwestern United States, particularly the State of Texas, and to transport the marijuana to the Atlanta, Georgia area. Thus, at a minimum, the areas of operation alleged in the two indictments appear to overlap substantially."), *with Nino*, 967 F.2d at 1511 (finding "place" factor militated in favor of finding separate conspiracies where record showed the following: "The California indictment refers only to activities in California. The Florida indictment includes activities in Queens, New York, Chicago, Illinois, Detroit, Michigan, and Tampa, Florida, but makes no reference whatsoever to California. Likewise, law enforcement investigations were geographically-and factually-independent: the affidavit of FBI agent Manuel Perez, who investigated the Florida/Detroit conspiracy, states that

Boles conspired with the same 5 co-defendants (*see* Doc. 1, PageID.1, 5),[10] the "persons acting as co-conspirators" factor also weighs in favor of finding a single agreement.[11] On the other hand, the "statutory offenses charged in the indictments" factor weighs in favor of separate agreements, since each alleges a conspiracy to violate a different statute. However, the Eleventh Circuit has recognized that "[i]dentity of the statutory offense is the least important of the *Marable* factors." *Nino*, 967 F.2d at 1511 n.6 (citing *United States v. Sturman*, 679 F.2d 840, 843 (11th Cir. 1982)). As for "overt acts," neither Counts One nor Eight allege any specific acts underlying their respective conspiracies, and the factual resume accompanying Boles's plea agreement (Doc. 82, PageID.283-302) suggests only one illicit agreement to manufacture methamphetamine, which also happened to involve obtaining pseudoephedrine to use in the manufacturing process.

*Braverman* and its progeny make clear that double jeopardy is not violated where a defendant is charged with, and convicted of, multiple counts involving a single conspiracy, so long as only one sentence is imposed for that conspiracy. Yet

---

before the Ninos' arrest, Perez had no knowledge of a DEA investigation targeting the Ninos in California in February 1989.").

[10] Count One also alleged that the defendants conspired "with other person, both known and unknown to the Grand Jury" (Doc. 1, PageID.1), while Count Eight does not (*id.*, PageID.5); however, "the fact that a conspiracy must take on additional members to accomplish one of its objectives does not in itself establish a different conspiracy." *Benefield*, 874 F.2d at 1507.

[11] While co-conspirator "commonality to both indictments is, by itself, insufficient to show a single conspiracy[,]" *Nino*, 967 F.2d at 1511, it is nevertheless a factor weighing in favor of a single conspiracy.

despite the existence of a viable *Braverman* double jeopardy argument, as set forth above, Boles's trial counsel failed to raise it and instead allowed the Court to impose separate sentences on Counts One and Eight. The record is currently devoid of any indication why trial counsel failed to raise the argument.

Nevertheless, to be entitled to relief based on ineffective assistance of counsel, a § 2255 movant must show not only deficient performance, but also "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Here, any error in counsel's failure to raise a *Braverman* objection at sentencing was harmless because Boles received concurrent sentences of equal length on his two counts of conviction. *See United States v. Pacchioli*, 718 F.3d 1294, 1308 (11th Cir. 2013) ("To the extent that Kennedy's argument could be construed as a challenge to his sentences, however, any possible error was obviously harmless because the arguably multiplicitous counts resulted in concurrent sentences."); *United States v. Langford*, 946 F.2d 798, 804–05 & n.24 (11th Cir. 1991) ("The principal danger in a multiplicitous indictment is, however, that the defendant may receive multiple sentences for a single offense. This danger need not concern us in this case as the sentences for the multiplicitous counts run concurrently." (citations omitted)); *United States v. Lee*, 785 F. App'x 667, 668 (11th Cir. 2019) (per curiam) (unpublished) ("The Double Jeopardy Clause of the Fifth Amendment protects against, among other things, multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed.2d 187 (1977). However, that danger may not be present where the sentences for multiplicitous counts are run concurrently. *See United States*

*v. Pacchioli*, 718 F.3d 1294, 1308 (11th Cir. 2013); *United States v. Langford*, 946 F.2d 798, 805-06 (11th Cir. 1991). While there are serious collateral consequences for receiving multiple convictions, where a defendant failed to object to the multiplicity of an indictment before trial, his challenge on appeal may be construed as a challenge to his sentence. *See Bobb*, 577 F.3d at 1372; *Pacchioli*, 718 F.3d at 1308. And where the arguably multiplicitous counts resulted in concurrent sentences, harmless error results. *See Pacchioli*, 718 F.3d at 1308."). *Cf. Brown v. Warden, FCC Coleman-Low*, 817 F.3d 1278, 1284 (11th Cir. 2016) ("When a prisoner has only one conviction and sentence, his detention is legal as long as his sentence is legal. However, if a prisoner is serving multiple sentences, his detention may be legal even if one of his sentences is not.").[12]

---

[12]   The Government argues that Ground 1 should be considered a claim of ineffective assistance for failure to object to an error committed by the Court. "When a claim of ineffective assistance is based on a failure to object to an error committed by the district court, that underlying error must at least satisfy the standard for prejudice that we employ in our review for plain error." *Gordon v. United States*, 518 F.3d 1291, 1298 (11th Cir. 2008). Because Eleventh Circuit precedent clearly holds that Boles's concurrent sentences render any double jeopardy error harmless, the Court need not determine whether the Government is correct in this regard. The Government's response also mixes in some discussion of the "law-of-the-case" doctrine in claiming that Boles is due no relief of Ground 1, but the Eleventh Circuit has expressed skepticism to the application of that doctrine to § 2255 proceedings regarding matters raised on direct appeal. *See Stoufflet v. United States*, 757 F.3d 1236, 1239-43 (11th Cir. 2014) (declining "to import the exceptions of the law-of-the-case doctrine, including the exception for manifest injustice, to the procedural bar for federal prisoners" against raising arguments in a § 2255 motion that were already raised and rejected on direct appeal.).

In the prior order directing the Government to further address Ground 1, the undersigned suggested that Boles had in fact shown prejudice from trial counsel's failure to raise the double jeopardy argument. (*See* Doc. 306, PageID.1548-1549). However, that order was not a final judgment on Boles's § 2255 motion, and the undersigned has reconsidered her reasoning in light of the noted holdings in

Because the "lesser included offense" double jeopardy argument Boles claims his trial counsel should have raised is meritless, and because he cannot show prejudice from counsel's failure to raise a *Braverman* double jeopardy argument at sentencing, Boles is due no relief on Ground 1.

### b.    Ground 2 – Criminal History Points

The Probation Office's Presentence Investigation Report (PSR) calculated a total criminal history score of 8 for Boles under the U.S. Sentencing Guidelines, resulting in a criminal history category of IV. *See* (Doc. 151, PageID.657, ¶ 48); U.S. Sent'g Guidelines Manual § 4A1.1 (U.S. Sent'g Comm'n 2014).[13] Boles claims in Ground 2 that trial counsel was ineffective for not objecting to the PSR adding one criminal history point for a third-degree theft sentence imposed on December 23, 2003 (*see* Doc. 151, PageID.655, ¶ 41), since that sentence was imposed over ten years prior to sentencing in this criminal action.

However, the sentencing guidelines only exclude sentences imposed over ten years from "the defendant's commencement of the offense at issue."   U.S. Sent'g

---

*Pacchioli*, *Langford*, and *Lee*. *See* Fed. R. Civ. P. 54(b) (generally, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all of the claims and all of the parties' rights and liabilities."); Rule 12 of the Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure…, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

[13] All guideline citations herein refer to those from the 2014 Guidelines Manual, the one in effect at the time of Boles's sentencing and used for his PSR. *See* U.S. Sent'g Guidelines Manual § 1B1.11; (Doc. 151, PageID.654, ¶ 29).

Guidelines Manual § 4A1.2(e)(2), (3). *See also id.* § 4A1.1 cmt. n.2. Count One alleged that the charged conspiracy began at some unspecified time in 2013, while Count Eight alleged that the charged conspiracy began "in or around mid-2011…" (Doc. 1, PageID.1, 5). The factual resume that accompanied Boles's plea agreement states that Boles purchased 65.04 grams of pseudoephedrine as part of the conspiracy from June 29, 2012, through January 2, 2014, and that one of Boles's relatives found a methamphetamine lab in the closet of his residence on December 9, 2013, which Boles transported away after the relative threatened to call the police. (*See* Doc. 82, PageID.285, 287). Thus, ample undisputed evidence in the record supported a finding that the offense at issue began less than ten years from the imposition of the December 23, 2003 sentence. Accordingly, Boles has not shown that trial counsel erred in failing to object to the inclusion of that sentence in calculating his criminal history score.

Moreover, the Government is correct that any error in this regard was harmless because, even without the extra point, Boles's criminal history score would have still resulted in a criminal history category of IV. *See* U.S. Sent'g Guidelines Manual, Chapter 5, Part A (imposing a criminal history category of IV on defendants with a criminal history score of 7 to 9). Accordingly, even if counsel was deficient in failing to object, Boles cannot show he was prejudiced by the error. In sum, Boles is entitled to no relief on Ground 2.

### c.     Ground 3 – Risk-of-Harm-to-a-Minor Enhancement

The sentencing guidelines impose a 6-level enhancement to a defendant's base offense level where the offense "(i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent…" U.S. Sent'g Guidelines Manual § 2D1.1(b)(13)(D).   The final PSR imposed a § 2D1.1(b)(13)(D) enhancement (*see* Doc. 151, PageID.654, ¶ 31), and the Court sustained application of that enhancement at sentencing.   (*See* Doc. 225, PageID.1285-1286).   Boles argues in Ground 3 that trial counsel was ineffective for failing to object to that enhancement, claiming that "[a] review of the plea agreement, the PS[R], and the testimonial evidence presented at sentencing indicated an absence of any admissions or evidence that a minor was present at the location of the alleged laboratory, or otherwise placed at substantial risk of harm." (Doc. 269, PageID.1443).

Paragraph 31 of Boles's draft PSR applied a 3-level enhancement under § 2D1.1(b)(13)(C)(ii), which applies where "the offense involved the manufacture of amphetamine or meth-amphetamine and the offense created a substantial risk of harm to (I) human life other than a life described in subdivision (D)…" U.S. Sent'g Guidelines Manual § 2D1.1(b)(13)(C)(ii).   Boles's trial counsel filed an objection "to the enhancement found at paragraph 31 showing that this Defendant created a substantial risk of harm to human life" (*see* Doc. 146, PageID.621), but did not object to any specific factual findings in the PSR supporting that enhancement.   For its part, the Government objected that Boles was instead due a 6-level enhancement under subdivision D because the offense created a substantial risk of harm to the life of a

minor.[14]  (*See* Doc. 147, PageID.623).  The Government's objection offered the following factual proffer in support:

> The Government submits that at the time when a co-defendant's apartment was raided and numerous one-shot labs were found, a minor was present and based on information available to the investigators, had been injected with some of the methamphetamine obtained from the defendant's manufactured product. The defendant was actually engaged in the manufacturing of methamphetamine at that location at the time, and fled along with several co-defendants to avoid apprehension by the sheriff's deputies. See Doc. 82 (factual resume) at p.19-20. In addition, at the time that another co-defendant became involved with the defendant, her minor son was also exposed to the defendant's manufacturing activities and  also  assisted  in  the manufacturing process. This minor had turned 18 years old and was present when the defendant's residence exploded and burned. Under these facts, the Government submits that the defendant is accountable for the six-level enhancement.

(*Id.*).

The Probation Office agreed with the Government and amended paragraph 31 in the final PSR to apply the 6-level enhancement under § 2D1.1(b)(13)(D).  (*See* Doc. 151, PageID.654, ¶ 31; Doc. 152, PageID.664).  In an addendum to the final PSR justifying this change, the Probation Office repeated, largely verbatim, the Government's above-quoted factual proffer.  Boles's trial counsel filed amended objections to the final PSR, which again stated that Boles "objects to the enhancement found at paragraph 31 showing that this Defendant created a substantial risk of harm

---

[14] For purposes of § 2D1.1(b)(13)(D), a minor is "an individual who had not attained the age of 18 years…"  *See* U.S. Sent'g Guidelines Manual §§ 2A3.1 cmt. n.1, 2D1.1 cmt. n.18(B)(ii).

to human life." (*See* Doc. 194, PageID.1026, ¶¶ 5, 7). Again, however, Boles's counsel made no specific objection to any underlying facts supporting that enhancement.

No witness testimony was taken at Boles's sentencing hearing, nor was any other evidence introduced. In support of the risk-of-harm-to-a-minor enhancement, counsel for the Government made the following proffer:

> The Government submits that the risk of harm to a minor is not because of children who were present, but [co-defendant] Heidi Hancock's minor son, who was not 19 years old at the time, I think he was maybe 17, he was present in the home in the room where the methamphetamine manufacturing was going on when the explosion occurred, and that clearly created a risk of harm to a minor. That's what that guideline penalizes.

> And I would add that when the police raided the apartment and the extensive numerous -- there were 23 salt generators that were seized. There were multiple methamphetamine shake bottles that were seized at that time. There was a minor present at that time who was being injected with methamphetamine that had just been manufactured who, as the police were there arresting the individuals who were left after some of them fled, she wigged out, frankly. And all of that is reflected in the Factual Resume that the Defendant signed at the time of the plea, and it's also contained in the Presentence Investigation Report.

> So the Government proffers that evidence in support of the six-level enhancement. And because there were two separate instances in this conspiracy where minors were present and jeopardized, the Government submits that that six-level enhancement is, in fact, appropriate.

(Doc. 225, PageID.1280-1281).

Following this proffer, the following exchange occurred among counsel and the Court regarding the risk-of-harm-to-a-minor enhancement:

> DEFENDANT'S COUNSEL: With regard to the minors involved, this is a child of one of the co-conspirators that's injecting the child into this

conspiracy and use, and perhaps she should be the one that is held accountable, but not my client.

GOVERNMENT: Your Honor, the risk of harm results not only from the use of the methamphetamine that the Defendant was manufacturing, which happened to occur in his presence, but also the -- her -- the presence of the minor in the meth lab itself, which we know they are dangerous because the Defendant did burn down a residence in the process of methamphetamine manufacturing. That information is in the Presentence Report.

...

THE COURT: Okay. With regard to the risk of harm, the minor present when the explosion occurred and the house burned is different than the minor present when the raid occurred; is that true?

GOVERNMENT: That's correct, Your Honor.

THE COURT: Okay

DEFENDANT'S COUNSEL: With regard to -- if I could address with regard to the house catching on fire, this was his house, and he has maintained from day one that he was not present when the fire took place. That's some of the other conspirators relating that information. []Having said all that, my client has never been debriefed or interviewed by anyone to have made a statement, but that's what his testimony would be. He was not there.

THE COURT: But he was present when the raid occurred?

DEFENDANT'S COUNSEL: Yes.

(*Id.*, PageID.1283-1284). The Court then went on to find:

With regard to the risk of harm, I think the information proffered to the Court today certainly justifies a six-level enhancement for risk to a minor. Even if I didn't accept the risk that occurred on the date that the residence burned, there's certainly evidence that the minor was present and, in fact, was using the methamphetamine on the day of the raid in a situation that Mr. Boles certainly could be held accountable for. So,

accordingly, the objection to the six-level enhancement for risk of harm to a minor is overruled.

(*Id.*, PageID.1285-1286).[15]

There is no indication in the record that the parties agreed or stipulated to the factual proffers of counsel at sentencing, and generally, "absent a stipulation or agreement between the parties, an attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on." *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013). The plea agreement's factual resume, as well as the initial and final PSRs, all discuss the two individuals identified as minors at sentencing, and provide factual support for the respective circumstances by which they were put in danger. However, none of those documents actually states that either individual is a minor or provides their ages. Nevertheless, the addendum to the final PSR does identify both individuals as minors, factual assertions to which Boles failed to object. "It is the law of this circuit that a failure to object to allegations of fact in a PS[R] admits those facts for sentencing purposes and precludes the argument that there was error in them." *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) (quotations omitted). *See also United States v. Bennett*, 472 F.3d 825, 833 (11th Cir. 2006) (per curiam) (holding that sentencing court could rely on undisputed facts in PSR and addendum).

---

[15] Boles challenged the imposition of the risk-of-harm-to-a-minor enhancement on direct appeal, but the Eleventh Circuit dismissed that challenge due to the appeal waiver in his plea agreement.

Thus, Boles's conclusory claim that there was no evidence to support a finding of substantial risk of harm to a minor is affirmatively contradicted by the record. Moreover, the Government correctly notes that Boles has failed to allege any reasonably specific, non-conclusory facts indicating what evidence or argument his trial counsel could have presented to rebut the Court's finding that the risk-to-a-minor enhancement applied. A § 2255 movant is not entitled to an evidentiary hearing, let alone relief from his sentence, "when his claims are merely conclusory allegations unsupported by specifics[,]" *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (quotation omitted), or when he offers mere speculation that favorable testimony could have been elicited. *See Estiven v. Sec'y, Dep't of Corr.*, No. 16-14056-D, 2017 WL 6606915, at *4 (11th Cir. Sept. 28, 2017) (Martin, J.) (unpublished) (order denying certificate of appealability). Accordingly, Boles is entitled to no relief on Ground 3, his final ground for relief under § 2255, and his § 2255 motion is therefore due to be **DENIED** and **DISMISSED with prejudice** as meritless, without an evidentiary hearing.

### d.      Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing § 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C.A. § 2253(c)(1)(A).

"A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337.

Upon due consideration, the undersigned finds that Boles should be **DENIED** a Certificate of Appealability in conjunction with the denial of his present § 2255 motion, as reasonable jurists would not debate whether his § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to

deserve encouragement to proceed further.[16]

### e.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is *860 "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

---

[16] Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

    Should the Court adopt this recommendation and deny a certificate of appealability, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Having considered the issues raised as set forth above, the undersigned **RECOMMENDS** the Court certify that any appeal by Boles of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[17]

## IV.    *Conclusion*

In accordance with the foregoing analysis, it is **RECOMMENDED** that Boles's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 dated February 6, 2018 (Doc. 269), be **DENIED** and **DISMISSED with prejudice**, without an evidentiary hearing; that the Court find Boles not entitled to a Certificate of Appealability or to proceed *in forma pauperis* on appeal; and that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.

**DONE** this the 2nd day of March 2021.

/s/ Katherine P. Nelson.
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[17] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.